The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 16, 2026

**2026COA29**

**No. 25CA0687, *English v. Thorpe* — Civil Procedure — Amended and Supplemental Pleadings — Amendments by Leave of the Court — Dismissal of Actions**

After the filing of a responsive pleading, C.R.C.P. 15(a) permits a party to amend their pleading "by leave of court" and dictates that "leave shall be freely given when justice so requires." By contrast, C.R.C.P. 41 addresses the dismissal of an action against a party. No rule or reported Colorado appellate case has yet addressed which rule applies when a party seeks to amend their pleading by dismissing some, but not all, of the claims it brought against a defending party.

For the first time in a published Colorado opinion, a division of the court of appeals addresses this question. The division concludes that Rule 15, rather than Rule 41, controls when a

motion to amend a pleading proposes to dismiss some, but not all, claims asserted against a defending party.

COLORADO COURT OF APPEALS **2026COA29**

Court of Appeals No. 25CA0687
Montrose County District Court No. 22CV30100
Honorable D. Cory Jackson, Judge

Danny English and Dean English,

Plaintiffs-Appellees,

v.

Shirley J. Thorpe,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

Announced April 16, 2026

Brian Kidnay, P.C., Brian Kidnay, Montrose, Colorado, for Plaintiffs-Appellees

Wegener Lane & Evans, P.C., Benjamin Wegener, Grand Junction, Colorado,
for Defendant-Appellant

¶ 1     This appeal arises from a dispute between Shirley J. Thorpe and the estate of Joseph English.  The estate, through co-personal representatives Dean English and Daniel "Danny" English, brought claims against Thorpe for unjust enrichment and conversion related to a home that Joseph and Thorpe jointly occupied.[1]  Dean and Danny are Joseph's sons.

¶ 2     Several months into the litigation, Thorpe moved to amend her answer and counterclaims to dismiss her counterclaims for entry of a declaration that a business partnership existed between her and Joseph and for winding up that partnership.  The district court denied her motion, and the case proceeded to trial.  The district court found that a partnership existed, awarded the estate monetary damages for Joseph's interest in the partnership, and, alternatively, awarded the estate damages on its unjust enrichment claim.

¶ 3     Thorpe now appeals the district court's ruling precluding her from amending her answer and counterclaims, its conclusion that a

_____

[1] Because there are multiple parties involved in this case with the shared surname of English, we refer to Joseph English, his brother, and his sons by their first names.  We intend no disrespect by doing so.

1

partnership existed, and its damage awards to the estate. We reverse the judgment and remand the case to the district court for further proceedings.

## I. Background

¶ 4   Thorpe and Joseph were in a romantic relationship for almost twenty-five years, which ended with Joseph's death in 2022. For the first several years of their relationship, the couple lived in a ranch house that Thorpe owned, which was located on approximately forty-three acres of property. In 2009, Thorpe subdivided two three-acre parcels, Lot 1 and Lot 2, from her original tract. Thorpe and Joseph built a new house on Lot 1. The parties agreed that Thorpe would provide the land and Joseph would provide the funds for construction of the house.

¶ 5   Joseph's brother, Alvin English, built the home for Joseph and Thorpe. Alvin testified that Joseph paid him to construct the house. Thorpe and Joseph obtained a joint loan, secured by Lot 1, to finance the home's construction. Thorpe and Joseph first owned Lot 1 as tenants in common but changed the ownership to joint tenancy in 2011. Until his death, Joseph paid the sums due on the

mortgage. In addition to contributing the land, Thorpe paid the utility bills, taxes, and insurance.

¶ 6 Thorpe and Joseph maintained their own bank accounts and, except for Lot 1, kept their property in their individual names. They did not own any businesses together. If the couple memorialized any arrangement regarding the ownership of Lot 1 other than the deed in joint tenancy, the document was not produced or admitted into evidence. During their relationship, neither party paid the other rent, and they used Lot 1 for no economic purpose other than their home.

¶ 7 Joseph eventually purchased Lot 2 from Thorpe and gifted it to Danny and Danny's wife. By then, Thorpe's original forty-three acre parcel had been divided into three distinct parcels: Thorpe and Joseph owned Lot 1 as joint tenants with rights of survivorship; Danny and his wife owned Lot 2; and Thorpe solely owned the remaining thirty-seven acres of land that included the ranch house.

¶ 8 Joseph's will includes a provision addressing Lot 1 as follows:

> I give and devise my interest in this real
> property in equal shares to Dean English, by
> representation, and Daniel English. If Daniel
> English shall predecease me and he is still
> married to Sherry English at his death, Sherry

English shall receive his share. If this property is titled in joint tenancy at the time of my death with Shirley Thorpe, this joint tenancy is subject to the agreement between me and Shirley Thorpe to equally contribute to the construction and maintenance of this property. Shirley Thorpe, in violation of our agreement, has not equally contributed to this property. My personal representative, at their discretion, is authorized to bring the appropriate action for reimbursement owing to me by Shirley Thorpe, which I estimate to be $300,000.

¶ 9 After Joseph's death, Danny and Dean approached Thorpe about Lot 1. The sons wanted Thorpe to convey to each of them a 25% interest in half of Lot 1 and provide them with a right to purchase the other half. Thorpe declined their offer.

¶ 10 Danny and Dean, as co-personal representatives of Joseph's estate, then sued Thorpe for unjust enrichment and conversion, claiming that the estate was entitled to the monetary value of Joseph's financial contributions to Lot 1. Thorpe's first attorney timely filed an answer and three counterclaims: (1) a declaration that a partnership existed between Thorpe and Joseph regarding Lot 1; (2) judicial winding up of the partnership; and (3) unjust enrichment for payments Thorpe made to service, and ultimately pay off, the loan on Lot 1 after Joseph's death. The estate admitted

4

there was a partnership between Thorpe and Joseph, and the case moved forward. Shortly thereafter, Thorpe's first attorney filed a motion for judicial supervision to wind up the alleged partnership, premised on the claim that Thorpe and Joseph were business partners.

¶ 11 Before the court ruled on the winding-up motion, however, Thorpe hired a new attorney. Thorpe later sought to amend her answer and counterclaims to drop the two partnership claims. In support of the motion, Thorpe's counsel stated that Thorpe did not know about the partnership counterclaims her first attorney made on her behalf and rejected the idea that there had ever been a business partnership between her and Joseph. Thorpe filed her motion to amend before any depositions had been conducted, approximately two months before discovery closed, and three and a half months prior to the then-scheduled trial date. The court denied the motion.

¶ 12 Although Thorpe filed the motion to amend under C.R.C.P. 15(a), which is the mechanism for amending pleadings, the court reasoned that because Thorpe was seeking to voluntarily dismiss two of her counterclaims, the motion was governed by C.R.C.P.

41(a)(2), which concerns the voluntary dismissal of actions. Applying that rule, the court determined that permitting Thorpe to dismiss her counterclaims would alter the nature of the case and lead to new discovery and additional delay and would therefore prejudice the estate. Based on this finding, the court denied the motion.

¶ 13 The matter proceeded to trial several months later. Even though the estate had never filed a claim asserting that a partnership existed, and Thorpe sought to abandon her counterclaims to that effect, the court determined that (1) a partnership existed between Thorpe and Joseph; (2) Thorpe was required to pay the estate $472,990 for Joseph's share of the partnership; and (3) alternatively, Thorpe was required to pay the estate $365,299.62 for Joseph's contributions to Lot 1 pursuant to the estate's unjust enrichment claim.

¶ 14 Thorpe now appeals the district court's denial of her motion to amend, its determination that there was a partnership between her and Joseph, and its damage awards to the estate.

## II.   Analysis

¶ 15   We first conclude that the district court erred by denying Thorpe's motion to amend. We then turn to the question of whether the amendment should have released Thorpe from the binding effect of her judicial admission regarding the existence of a partnership, and, if so, whether the district court's monetary judgments on the partnership and unjust enrichment claims can be supported absent the preclusive effect the court gave the judicial admission.

### A.   Thorpe's Motion to Amend

#### 1.   Standard of Review and Applicable Law

¶ 16   A party may amend their pleading once as a matter of course before a responsive pleading is filed. C.R.C.P. 15(a). If a responsive pleading has been filed, a party may amend their pleading only by leave of court or the written consent of the adverse party. *Id.* Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." When considering a Rule 15(a) motion, "the [district] court must assess the motion to amend in light of the totality of the circumstances [and] balance the policy favoring the amendments of pleadings against the burdens which granting the

amendment may impose on the other parties." *Polk v. Denv. Dist. Ct.*, 849 P.2d 23, 26 (Colo. 1993).

¶ 17     "The rule prescribes a liberal policy of amendment and encourages the courts to look favorably on requests to amend." *Varner v. Dist. Ct.*, 618 P.2d 1388, 1390 (Colo. 1980).  But the district court retains discretion to grant or deny a motion to amend a pleading.  *Polk*, 849 P.2d at 25.  Therefore, we review the denial of a Rule 15(a) motion to amend for an abuse of discretion.  *Davis v. GuideOne Mut. Ins. Co.*, 2012 COA 70M, ¶ 69.  "A court abuses its discretion where its decision rests on a misunderstanding or misapplication of the law, or is manifestly arbitrary, unreasonable, or unfair." *In re Estate of Shimizu*, 2016 COA 163, ¶ 15 (citation omitted).

¶ 18     In contrast, C.R.C.P. 41 addresses motions to dismiss an action.  Rule 41(a)(1) allows a party to dismiss an action against an adverse party before any party has filed an answer or motion for summary judgment by filing a notice of dismissal and paying all costs or by filing a stipulation for dismissal signed by all parties who appeared in the action.  Rule 41(a)(2) governs dismissal of an action after an answer or motion for summary judgment is filed.  It

says, "Except as provided in subsection (a)(1) . . . , an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." We review the district court's ruling on a motion to dismiss under C.R.C.P. 41(a)(2) for an abuse of discretion. *In re Water Rts. of Hines Highlands Ltd. P'ship*, 929 P.2d 718, 728 (Colo. 1996).

¶ 19    The parties do not cite, and we are not aware of, any Colorado authority addressing whether C.R.C.P. 15(a) or C.R.C.P. 41(a) controls when a party seeks to amend a pleading by dismissing some, but not all, of that party's previously asserted claims against a party.

¶ 20    We review de novo the district court's interpretation of the rules of civil procedure. *Garcia v. Schneider Energy Servs., Inc.*, 2012 CO 62, ¶ 7. We interpret rules of procedure according to their "commonly understood and accepted meaning[s]," relying as necessary on "various interpretational aids, including the federal

rules and federal precedent interpreting federal rules." *Id.* (quoting *Leaffer v. Zarlengo*, 44 P.3d 1072, 1078 (Colo. 2002)).[2]

### 2.    Analysis

¶ 21    The district court's order did not cite any case law or legal authority other than the two rules in question.  The order reads, in relevant part as follows:

> [Thorpe] seeks to dismiss two counterclaims by way of amendment pursuant to [C.R.C.P.] 15.  The asserted basis for the request is the substitution of counsel and renewed investigation into the facts and merits of the claims.
>
> As a threshold matter, simple dismissal of claims should proceed pursuant to [C.R.CP.] 41.  The parties disagree about the real difference in the semantic distinction between the two rules.  But what appears significant is that amendment is sought to significantly change the nature of the case.  [Thorpe] wants to abandon the position that there was a formal partnership between her and [Joseph].
>
> The [estate] argue[s] that [it] will be prejudiced because the parties have answered each[ ] other's claims and . . . they have adopted Thorpe's prior partnership position and seek to

---

[2] Although there are structural differences in the organization of C.R.C.P. 15 and 41 and the parallel provisions of Fed. R. Civ. Pro. 15 and 41, those differences in the portions of the rules that we cite — and the related state and federal cases we discuss — are not material to our analysis.

incorporate it. The [estate is] also concerned about amendment late into the development of the case.

Discovery in this case was to be served before the motion was ripe, and the depositions completed. Trial has recently been continued. To require a party to maintain claims they want to dismiss or abandon is inefficient. But leave to amend now would significantly alter the nature of this case and may lead to a need for new discovery, additional delay, and will have wasted [previous] efforts to prosecute this case. These issues will prejudice [the estate].

Because of the broad likely impact of the amendment of this case, the motion to amend is denied.

¶ 22    As both parties conceded at oral argument, no reported Colorado decision directly addresses this issue. In its answer brief, the estate argues that the district court correctly denied Thorpe's motion pursuant to C.R.C.P. 41(a)(2). In support of that contention, the estate cites C.R.C.P. 41(c), asserting that it "makes clear that 'counterclaims' and 'claims' are treated the same under [C.R.C.P. 41]." Thus, the estate argues, the district court correctly applied C.R.C.P. 41(a)(2) when denying Thorpe's motion to dismiss the two partnership claims. Indeed, despite the arguments Thorpe presented under C.R.C.P. 15(a) in the district court and on appeal,

the estate's appellate brief makes no argument that the district court's denial of Thorpe's motion was appropriate under C.R.C.P. 15(a).

¶ 23     C.R.C.P. 41 applies to the dismissal of an action — that is, when a party seeks to dismiss all claims against another party. *See Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001) ("Rule 41(a)(1)(i) does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action' — which is to say, the whole case."). Nevertheless, at oral argument — after conceding the C.R.C.P. 41 generally applies to the dismissal of an action rather than the dismissal of claims — the estate's counsel argued that C.R.C.P. 41(c) distinguishes between claims and counterclaims, suggesting for the first time that counterclaims should be treated differently than claims under Rule 41 .

¶ 24     But the estate did not develop that argument, and we find no support for it under Rule 41(c), which provides as follows:

> The provisions of this Rule apply to the dismissal of any counterclaim, cross claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subsection (a)(1) of this Rule shall be made before a responsive pleading is filed or served or, if

there is none, before the introduction of
evidence at the trial or hearing.

¶ 25    Although we recognize that this paragraph refers to the

"dismissal of any counterclaim," we understand it to mean that a

counterclaim is to be treated the same as a claim for purposes of

Rule 41.  There is no principled reason to treat claims and

counterclaims differently under Rule 41.  Equally important, the

estate's undeveloped assertion is directly contrary to its prior

appellate argument that claims and counterclaims are treated the

same under Rule 41.

¶ 26    Given the lack of Colorado case law addressing whether Rule

15(a) or Rule 41(a)(2) controls a motion to dismiss under the

scenario presented in this case, we turn to the federal courts for

guidance.  *See Garcia*, ¶ 7.  Generally, federal courts have

concluded that Fed. R. Civ. P. 41 governs the dismissal of an action

asserted against a party, while Fed. R. Civ. P. 15 governs the

dismissal of some, but not all, claims asserted against a party.

¶ 27    The decision of the United States District Court for the District

of Kansas in *Campbell v. Hoffman*, 151 F.R.D. 682 (D. Kan. 1993),

13

is instructive on the two rules and the distinction between actions and claims:

> Rule 41(a)(2) refers to dismissal of "an action" as opposed to an individual claim or claims. The language of Rules 41(a)(1), 41(b), and 41(d) refer[s] to both actions and claims, indicating that the drafters of Rule 41 drew a distinction between those two terms and intended them to have different meanings. Thus, while the Tenth Circuit apparently has not addressed the question, the court concludes that Rule 41(a)(2) authorizes a plaintiff to dismiss voluntarily an "action," but does not apply when a plaintiff seeks to dismiss some, but not all, of his or her claims. A motion to eliminate certain claims from a multi-count complaint should be made in a motion to amend under Rule 15.

*Id.* at 684 (footnotes and citations omitted); *see also LaserCycle USA, Inc. v. Balcourt*, Civ. A. No. 11-cv-01995, 2011 WL 5331675, at *1 (D. Colo. Nov. 3, 2011) (unpublished order) ("Although there is no controlling decision of the Tenth Circuit, the weight of authority from other circuits is that Rule 41(a) governs dismissal of all claims against a defendant and does not allow for piecemeal dismissals."); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 688 (9th Cir. 2005) ("Federal Rule of Civil Procedure 15(a) is the appropriate mechanism '[w]here a plaintiff desires to eliminate an

14

issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants.'" (quoting *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988))); *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) ("Voluntary dismissal by court order under Rule 41(a)(2) allows the plaintiff to dismiss 'an action' on 'terms that the court considers proper.' Although some courts have held otherwise, we've said that Rule 41(a) 'does not speak of dismissing one claim in a suit; it speaks of dismissing "an action" . . . .'" (first quoting Fed. R. Civ. P. 41(a)(2); and then quoting *Berthold*, 242 F.3d at 777)). Finding these authorities instructive, we return to the district court's ruling on Thorpe's motion to amend.

¶ 28 Recall that Thorpe originally asserted three counterclaims against the estate. The first counterclaim sought a declaratory judgment that a partnership existed between Thorpe and Joseph; the second sought her designation as the party in charge of winding up the partnership; and the third was a claim for unjust enrichment. In her motion to amend, Thorpe sought to drop both

15

partnership counterclaims.  She still wished to pursue the unjust enrichment counterclaim, however.[3]

¶ 29     Because Thorpe did not seek to dismiss all her counterclaims, the district court applied the incorrect legal standard by treating Thorpe's Rule 15(a) motion to amend as a Rule 41(a)(2) motion to dismiss and thus erred.  This error was not harmless because — as discussed more fully below — although similar, the factors applied to evaluate a motion to amend a pleading under Rule 15(a) are more favorable to the moving party than those applicable to a motion to dismiss an action under Rule 41(a)(2).

¶ 30     When a district court is evaluating a Rule 15(a) motion, the rule requires that leave to amend must be "freely given" absent "undue delay, bad faith, . . . undue prejudice . . . , futility of amendment, etc."  *Varner*, 618 P.2d at 1390 (first quoting C.R.C.P. 15(a); and then quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The court's order denying the motion to amend was grounded on its finding that dismissal "would significantly alter the nature of this case and may lead to a need for new discovery, additional delay,

---

[3] Prior to trial, the parties stipulated to the dismissal of Thorpe's unjust enrichment counterclaim.

and will have wasted previous efforts to prosecute this case." We are not persuaded that, under the facts of this case, these reasons were sufficient to deny the motion under Rule 15(a).

¶ 31 Of course, dismissal of Thorpe's partnership counterclaims would have impacted the procedural posture of the case because Thorpe would no longer have been asserting the existence of a partnership. But any prejudice associated with that procedural change could have been readily and efficiently remedied by allowing the estate to assert partnership claims against Thorpe. And if the estate decided to assert the existence of a partnership, then its prior litigation expenses would not have been wasted.

¶ 32 True, permitting the amendment may have necessitated additional discovery. But importantly, at the time Thorpe filed her motion, discovery had not yet concluded, and although Thorpe's deposition was scheduled, it had not yet occurred. Moreover, the trial was not set to start for three and a half months. And nearly three months later, when the court finally resolved Thorpe's motion to amend, it also continued the trial for another four months. Thus, there was sufficient time to allow for additional discovery, if needed. And the court could have entered appropriate orders to

financially compensate the estate for any economic losses it would have incurred due to the delay. *See Eagle River Mobile Home Park, Ltd. v. Dist. Ct.*, 647 P.2d 660, 663 (Colo. 1982) ("[E]ven where the party attempting to amend his pleadings is guilty of delay in seeking an amendment, it is preferable to allow the amendment subject to any conditions necessary to avoid prejudice to the opposing parties."). In short, the court could have addressed and mitigated any prejudice the delay and new procedural posture may have created for the estate.

¶ 33 The court did not conclude that Thorpe filed her motion in bad faith. And in her motion, Thorpe represented that she had not known that her first counsel had asserted the partnership counterclaims. As the court later acknowledged in its final judgment, Thorpe is advanced in years and has health issues requiring extensive care. These findings, along with the fact that the estate did not initially assert a claim that there was a partnership between Joseph and Thorpe, inferentially support a conclusion that Thorpe was not acting in bad faith. The estate did not offer contradictory facts.

¶ 34 Finally, even if we were to assume for the sake of argument, that the court properly converted Thorpe's motion to amend into a motion under Rule 41(a)(2), such a motion "generally should be granted unless a dismissal would result in legal prejudice" to the other party. *Sinclair Transp. Co. v. Sandberg*, 2014 COA 75M, ¶ 29 (quoting *Powers v. Pro. Rodeo Cowboys Ass'n*, 832 P.2d 1099, 1102 (Colo. App. 1992)). For the reasons previously stated, we discern no prejudice to the estate that could not have been ameliorated. So even if it had been proper for the court to treat the Rule 15(a) motion as a Rule 41(a)(2) motion, denial of the motion was not warranted. *See Powers*, 832 P.2d at 1103 (factors to consider when evaluating a filing to voluntarily dismiss all of a party's claims include prejudice to the nonmoving party, progression of the litigation, adequacy of the moving party's explanation of the reasons for dismissal, delay in pursuing the dismissal, and undue vexation on the part of the moving party).

¶ 35 Thus, the district court's erroneous denial of Thorpe's motion to amend was not harmless and constituted an abuse of discretion. *See Shimizu*, ¶ 15 ("A court abuses its discretion where its decision rests on a misunderstanding or misapplication of the law . . . .").

19

## B. Determination of Partnership

¶ 36 The next question is whether the district court erred by determining that there was a partnership between Thorpe and Joseph. The court found that Thorpe's counterclaim requesting winding up of the partnership "was dispositive of the issues related to [L]ot 1." The court treated the counterclaim as a "judicial admission" and primarily relied on it when concluding that a partnership existed and when rejecting Thorpe's statute of limitations and joint tenancy defenses.

¶ 37 Thorpe argues that if she had been allowed to dismiss the partnership counterclaim, it could no longer serve as a judicial admission. Further, Thorpe contends that in the absence of a binding judicial admission, there was insufficient evidence to support the district court's factual finding that a partnership existed. We address these contentions in turn.

### 1. Standard of Review and Applicable Law

¶ 38 A partnership is "the association of two or more persons to carry on, as co-owners, a business for profit." § 7-60-106(1), C.R.S. 2025; *see Yoder v. Hooper*, 695 P.2d 1182, 1187 (Colo. App. 1984) (A partnership may also be defined "as an express or implied

20

contract between two or more persons to place their money, skill, effects, or labor into a business and to share the profits and losses."), *aff'd*, 737 P.2d 852 (Colo. 1987). "The existence of a partnership is a question of fact to be determined from direct evidence and the inferences that can properly be drawn from that evidence, but the question whether the evidence establishes a partnership is one of law." *Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo. App. 2002) (citing *Blocker Expl. Co. v. Frontier Expl., Inc.*, 740 P.2d 983 (Colo. 1987)).

¶ 39    "We review findings of fact for clear error, meaning that we won't disturb such findings if there is any evidence in the record supporting them." *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24, *aff'd*, 2021 CO 56. We review a district court's legal rulings de novo. *Garcia*, ¶ 7.

¶ 40    "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986). Judicial admissions are binding on the party who makes them, are evidence against such party, and may

21

constitute the basis of a verdict. *Nw. Nat'l Cas. Co. v. State*, 682 P.2d 486, 489 (Colo. App. 1983).

### 2.    The Impact of a Judicial Admission in a Withdrawn Pleading

¶ 41    As we concluded above, the district court erred by denying Thorpe's motion to amend her answer and counterclaims. So we must now consider whether Thorpe's prior judicial admission would have had any impact — legally or factually — had the court permitted the amendment. If, despite the counterclaim's withdrawal, the original allegation could have been treated as a judicial admission, it was — as the district court noted — dispositive. On the other hand, if the withdrawn allegation was not binding, the other evidence may not have been sufficient to support the existence of a partnership. So the status of the prior judicial admission is important to the disposition on appeal. There is no recent Colorado case law on this point.

¶ 42    Although dated, the supreme court's decision in *Bowers v. Cannon*, 116 P. 336 (Colo. 1911), is instructive. There, the court stated that admissions "made in a verified pleading, and afterwards omitted from the pleading as amended, though not conclusive against the party making them, are, nevertheless, admissible as

evidence in the case and may be considered by the court." *Id.* at 338. This statement suggests that an admission made in a subsequently withdrawn pleading should be treated as an evidentiary admission, not as a judicial admission. *See id.*; *see also Georgia-Pacific, LLC v. Fields*, 748 S.E.2d 407, 410-11 (Ga. 2013) (concluding that if a pleading is withdrawn or amended, a judicial admission contained within it can be tendered as evidence and considered by the fact finder, although it no longer has the binding effect of a judicial admission).

¶ 43 Thus, we conclude that an admission made in a pleading that is subsequently withdrawn by amendment is no longer a judicial admission, but can still be considered as an evidentiary admission. *See Gibbs v. Herman*, 714 A.2d 432, 437 (Pa. Super. Ct. 1978) ("Judicial admissions are conclusive, whereas evidentiary admissions may always be contradicted or explained." (quoting *Duquesne Light Co. v. Woodland Hills Sch. Dist.*, 700 A.2d 1038, 1054 (Pa. Commw. Ct. 1997))).

¶ 44 This rule strikes an appropriate balance between holding litigants responsible for their representatives' allegations and facilitating the pursuit of truth over rigidly binding a party to an

allegation or claim that has since been dismissed. After all, the evidence may establish that a subsequently withdrawn judicial admission resulted from an error of counsel or the client. On the other hand, the evidence may establish that the client created or knowingly agreed to the original allegation, giving the evidentiary admission more weight. Thus, the ultimate impact of the now-withdrawn admission should be resolved as a matter of fact rather than law.

### 3.    Remaining Factual Evidence of a Partnership

¶ 45    In light of the district court's erroneous denial of the motion to amend and its corresponding treatment of the partnership counterclaims as a judicial admission, we must consider whether the remaining evidence was sufficient to find that a partnership had been proved. We conclude that it was not.

¶ 46    The district court's order of judgment states that, "[i]n addition to the admissions entered before trial, the evidence presented at the hearing proves that [Joseph] and [Thorpe] intended to engage in a partnership. The nature of their tenancy in Lot 1 does not show a contrary intent and does not defeat the partnership claim."

¶ 47    But these findings amplify the problems created by the district court's error in denying the motion to amend and treating Thorpe's partnership counterclaims as a judicial admission.  If the court had allowed Thorpe's amendment dismissing the partnership counterclaims, there would have been no judicial admission.  And the potential weight of any evidentiary admission cannot be assessed based on the current record.  Moreover, the estate would have had to file an amended complaint asserting the existence of a partnership.  This would have dramatically impacted the legal and procedural burdens applicable to any partnership claims.  The estate would have been required to come forward with affirmative evidence establishing the existence of a partnership.  And the estate would have borne the burden of proving the alleged partnership by a preponderance of the evidence.  And, of course, Thorpe would have been permitted to deny the existence of a partnership and fully challenge any evidence that a partnership existed.

¶ 48    Finally, to the extent the estate argues that the existing evidence was sufficient to establish the existence of a partnership independent of a binding judicial admission, we are not persuaded. We acknowledge that Danny and Dean testified about various

expenditures Joseph made in the construction of the house and related improvements on Lot 1. But they provided no testimony that a partnership existed or evidence to suggest that Joseph and Thorpe were carrying on a business for profit.

¶ 49    We also acknowledge that Joseph's will includes a statement that he and Thorpe owned Lot 1 in joint tenancy subject to an agreement to "equally contribute to the construction and maintenance of this property." The will also asserts that Thorpe had not equally contributed to the property and authorized Joseph's personal representative to bring an action against Thorpe for reimbursement of Thorpe's allegedly unpaid contributions, which were estimated at $300,000. But noticeably absent from the will is any reference to the existence of a partnership or an agreement between Joseph and Thorpe to operate Lot 1 as a business and share the profits and losses.

¶ 50    In sum, the district court's conclusion that a partnership existed was driven by the binding effect it gave to Thorpe's judicial admission in the partnership counterclaims. The judicial admission, which the court characterized as "clear" and "dispositive," was its North Star, not only as it related to the

partnership claims but also Thorpe's defenses thereto. Thus, we cannot say that the evidence was sufficient to support these claims in the absence of the erroneous conclusion that the judicial admission was dispositive.

### 4. Unjust Enrichment Claim

¶ 51 Similarly, the record before us does not support the court's damage award on the unjust enrichment claim. The elements of a claim for unjust enrichment are (1) the opposing party received a benefit; (2) it was at the asserting party's expense; and (3) it was under circumstances that would make it unjust for the opposing party to retain the benefit without paying the asserting party commensurate compensation. *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 63. "Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party." *Id.*

¶ 52 In its order, the court did not analyze the evidence to assess whether these elements had been proved. Instead, the court summarily stated,

> As found above, [Thorpe] and [Joseph] had an agreement to develop the property at Lot 1. They agreed that [Thorpe] would contribute the

27

> land, and [Joseph] would pay to have the home and shop built. [Joseph's] contribution was $365,299.62. [Thorpe] is now the fee simple owner of Lot 1 with its dwelling and thus benefits, to [the] estate's detriment, from [Joseph's] contribution.

As demonstrated by the first sentence of this paragraph, the court's assessment of the unjust enrichment claim was predicated on its previous finding that an agreement existed between Joseph and Thorpe to develop the property. That "agreement" was the partnership agreement that the court found based on the outcome-determinative effect it gave to the judicial admission. Thus, for the same reasons we cannot affirm the court's conclusion that a partnership existed, we cannot conclude that the evidence was sufficient — absent the judicial admission — to support the court's unjust enrichment findings.

## 5. Conclusion

¶ 53 We reverse the judgment and remand for a new trial. On remand, the court shall grant Thorpe's motion to amend and permit her to withdraw the partnership counterclaims. In its discretion, the court may also permit the estate to amend its claims, if the estate so desires, and allow the parties to conduct additional

28

discovery.  And the court may treat Thorpe's prior judicial admission as an evidentiary admission.  Absent a negotiated resolution of the dispute, the court shall conduct a new trial to resolve the parties' claims.

## III.   Disposition

¶ 54     We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

JUDGE FREYRE and JUDGE BROWN concur.